UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :      Chapter 7

TIMOTHY N. JADCZAK                              :

                    Debtor                      :      Bankruptcy No. 10-11804
_____

GAIL WASHINGTON                                :

                    Plaintiff                   :

        v.                                      :

TIMOTHY N. JADCZAK                              :

                    Defendant                   :      Adversary No. 10-0230
_____

..................................................

MEMORANDUM

..................................................

        The above-captioned plaintiff, Gail Washington, has filed an adversary

proceeding against the debtor, Timothy Jadczak, seeking a determination that her claim

against him is not dischargeable under 11 U.S.C. § 523(a)(2)(A) and/or (a)(4).  Her

complaint also includes two state law claims for damages, including punitive damages

and attorney's fees.  The debtor filed an answer that denies any liability to the plaintiff,

denies the existence of any nondischargeable claim, and asserts a counterclaim for

reasonable attorney's fees under 11 U.S.C. § 523(d).

        Presently before me is the debtor's motion for summary judgment (albeit

not on his counterclaim) seeking a determination that he does not have any liability to the

plaintiff and therefore there is no debt to her that can be held not dischargeable.  In

response, the plaintiff opposed the debtor's motion and filed a cross-motion for summary

judgment, which cross-motion is also before me.  In her cross-motion, the plaintiff seeks

a monetary judgment against the debtor in the amount of $31,500 and a determination that

this judgment is not dischargeable owing to fraud under section 523(a)(2)(A).  This cross-

motion does not seek summary judgment as to punitive damages or attorney's fees; nor,

as will be discussed below, does the plaintiff's motion address her claim under section

523(a)(4).

       The deadline for discovery has passed.  The parties have submitted

supporting memoranda.  Moreover, they were afforded the opportunity for oral argument

of their positions.  Upon consideration of their arguments and respective submissions, and

for the reasons that follow, defendant's motion for summary judgment shall be granted

and plaintiff's cross-motion denied.  The issues not addressed in their cross-motions

remain, however, and they shall be scheduled for trial.


I.


       The following material facts, gleaned from admissions in the pleadings,

affidavits, and exhibits are not in dispute.

       The debtor, Timothy Jadczak, along with Adam Neff, was a member of a

Pennsylvania limited liability company known as T&A Auto Sales, LLC.  See Plaintiff's

Cross-Motion, ex. A (¶ 5); Debtor's Affidavit, ¶ 2.  T&A Auto was in the business of

selling used vehicles to the general public, using various methods to advertise to the

public, including the internet.  Plaintiff's Cross-Motion, ex. A (¶ 4).

2

T&A Auto was located in Philadelphia, Pennsylvania.  See Plaintiff's Cross-Motion, ex. C.  In August 2008, the plaintiff, Colonel Washington, was an officer on active duty with the United States Army.  Plaintiff's Affidavit, ¶ 1.  At that time, she was stationed in Yuma, Arizona.  Id.

On August 22, 2008, Colonel Washington entered into an agreement with T&A Auto to purchase a used 2008 Cadillac SRX automobile at a cost of $30,000.  Plaintiff's Cross-Motion, ex. C.  The agreement was signed by Mr. Jeff Campbell on behalf of T&A Auto.  Id.  Colonel Washington also agreed to pay T&A Auto an additional $1,500 to transport this automobile to her base in Yuma, Arizona.  Plaintiff's Memorandum, at 2.[1]  There is no dispute that Colonel Washington paid T&A Auto the agreed upon $31,500, using borrowed funds.  See Plaintiff's Cross-Motion, ex. D; Debtor's Memorandum in Opposition, at 2.

---

[1]As will be discussed more fully below, adversary proceedings in bankruptcy cases are governed by Fed. R. Bankr. P. 7056, which procedural rule incorporates Fed. R. Civ. P. 56.  Both this adversary proceeding and the instant cross-motions themselves were filed prior to December 1, 2010.  Accordingly, I shall apply the pre-December 1st version of Rule 56.  See Supreme Court Order, April 28, 2010.

Former Rule 56(e)(1) provided, in part, that an affidavit supporting or opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Moreover, "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."

Here, the plaintiff's affidavit, attached as exhibit H to her cross-motion, identifies the plaintiff as an Army colonel who was stationed in Arizona in August 2008 and attempted to purchase an automobile from T&A Auto.  Thereafter, she simply avers: "I have read Plaintiff's Memorandum of Law . . . and all the facts set forth therein are true and correct in all respects."

Such an averment is not consistent with the requirements of Rule 56(e)(1), just quoted.  See Todd v. TIG Premier Insurance Co., 149 Fed Appx. 722, 724-26 (10th Cir. 2005).  Nevertheless, for purposes of determining these cross-motions, I shall consider factual statements made in the plaintiff's legal memorandum that would fall within her personal knowledge, as such consideration would not affect the outcome of these cross-motions.

3

T&A Auto did not own the Cadillac automobile that Colonel Washington desired to purchase.  Instead, Colonel Washington avers, and Mr. Jadczak does not appear to deny, see Debtor's Memorandum in Opposition, at 2, that two individuals authorized to purchase vehicles on behalf of T&A Auto traveled with Colonel Washington to the Manheim Auto Auction on August 22, 2008, ostensibly to purchase the aforementioned Cadillac.  See also Plaintiff's Memorandum, ex. B.  Colonel Washington further asserts that only authorized dealers can actually attend the Manheim auction, and thus she could not witness the actual auction on August 22nd.  Plaintiff's Memorandum, at 2.  This assertion is not contested by the debtor.

It is undisputed that T&A Auto did not purchase any vehicle that day on behalf of Colonel Washington.  Moreover, no Cadillac vehicle was ever delivered to her in Arizona; nor were her payments refunded.  See Plaintiff's Memorandum, at 3; see generally Plaintiff's Cross-Motion, exs. A & K (¶ 13).  As a result, Colonel Washington brought suit for damages against T&A Auto in the Philadelphia Court of Common Pleas in March 2009.  Plaintiff's Cross-Motion, ex. I.  On November 16, 2009, an arbitration panel entered an award in her favor against T&A Auto in the amount of $50,000.  Id.

In September 2009, Colonel Washington also brought suit against the debtor and Mr. Michael DeCastro.  Plaintiff's Cross-Motion, ex. K; Debtor's Motion, ex. C.[2]  Mr. Jadczak filed an answer to this complaint denying liability.  He also cross-claimed against Mr. DeCastro, alleging that the latter was completely responsible for any fraud perpetuated against the plaintiff.  Plaintiff's Cross-Motion, ex. A.  Colonel Washington obtained judgment by default against Mr. DeCastro in the amount of

---

[2]Although the debtor's memorandum refers to this exhibit as "C," it is unmarked.

4

$31,500; the state court litigation against Mr. Jadczak was stayed by his chapter 7

bankruptcy filing.  Debtor's ex. C.

      Mr. Jadczak, in his affidavit in support of summary judgment, denies ever

speaking with, or dealing with, Colonel Washington.  Debtor's Affidavit, ¶¶ 5, 6.  He did

not attend the Manheim Auction sale with Colonel Washington.  He did not solicit her

business, sign the sales agreement, nor personally receive from her the checks made

payable to T&A Auto.  Id., ¶¶ 3, 4, 7; Plaintiff's Cross-Motion, ex. A, ¶¶ 6-9, 11.

Colonel Washington does not dispute these averments, contending only that, after not

receiving her vehicle, she spoke on the telephone with the debtor who denied any

personal responsibility.  Plaintiff's Memorandum, at 3.

      The debtor does acknowledge, however, that he did receive a check signed

by Colonel Washington and made payable to T&A Auto, albeit not from Colonel

Washington but from an individual named "Moe," an associate of Mr. DeCastro.

Plaintiff's Cross-Motion, ex. A, ¶ 12.  He further admits that he thereafter gave $30,950

to Mr. DeCastro to purchase a vehicle.  Id.; see also  Plaintiff's Cross-Motion, ex. F.[3]

      Finally, the debtor filed a voluntary petition in bankruptcy under chapter 7

on March 10, 2010.  After conducting the meeting of creditors, the chapter 7 trustee filed

a report stating that there are no non-exempt assets of the debtor that he intends to

administer on behalf of creditors.  Thus, this case is classified as a no-asset chapter 7

case.

---

     [3]Plaintiff attached to her cross-motion copies of four checks possibly signed by
the debtor (the signatures are unclear) made payable on two different dates in late August 2008 to
Mr. DeCastro, totaling $31,400.  All four checks are drawn on the same T&A Auto bank account
with Commerce Bank.  The difference between the amount of those checks and the amount
admitted by the debtor is not material to this dispute.

The plaintiff then timely filed this adversary proceeding, seeking a determination of non-dischargeability in count I, treble damages under Pennsylvania's Unfair Trade Practices and Consumer Protection Law in count II, and punitive damages for common law fraud in count III.

In count I, Colonel Washington asserts that she was defrauded by the debtor and suffered damages thereby. Thus she seeks a determination under section 523(a)(2)(A) that she holds a nondischargeable claim against the debtor.

Also in count I, the plaintiff alleges that after she commenced her lawsuit against T&A Auto in March 2009 but before the arbitration hearing in November 2009 T&A liquidated all of its assets. Complaint, ¶ 22. At oral argument, plaintiff's counsel asserted that this liquidation was improper and gives rise to a claim against the debtor under section 523(a)(4).

## II.

The purpose of summary judgment is to avoid the expense and delay of an unnecessary trial because no material facts are in dispute and one of the parties is entitled to prevail on the merits. See, e.g., Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977). In general, the standard for entry of summary judgment under Federal Rule of Civil Procedure 56, incorporated into bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, is well established. As the Third Circuit Court of Appeals explained:

> Summary judgment is appropriate when the moving party is
> entitled to judgment as a matter of law and there is no genuine

6

> dispute of material fact. . . .  In order to defeat "a properly
> supported summary judgment motion, the party opposing it
> must present sufficient evidence for a reasonable jury to find
> in its favor."  <u>Groman v. Township of Manalapan</u>, 47 F.3d
> 628, 633 (3d Cir. 1995) (citing <u>Anderson v. Liberty Lobby,
> Inc.</u>, 477 U.S. 242, 250-52, 106 S. Ct. 2505, 2511-12, 91 L.
> Ed. 2d 202 (1986)).  In essence, the non-moving party must
> demonstrate a dispute over facts that might affect the outcome
> of the suit.  <u>Id.</u>  Moreover, in reviewing the record, we must
> give the non-moving party the benefit of all reasonable
> inferences. . . .

<u>Hampton v. Borough of Tinton Falls Police Dept.</u>, 98 F.3d 107, 112 (3d Cir. 1996) (some

citations omitted).  This standard does not change when cross-motions for summary

judgment are considered.  <u>See</u>, <u>e.g.</u>, <u>Peters Twp. Sch. Dist. v. Hartford Accident and

Indem. Co.</u>, 833 F.2d 32, 34 (3d Cir. 1987).  "On cross-motions for summary judgment,

the court must construe the motions independently, viewing the evidence presented by

each moving party in the light most favorable to the nonmovant."  <u>Selective Way Ins. v.

Travelers Property Cas. Co. of America</u>, 2010 WL 2720751, at *4 (E.D. Pa. 2010).

 The application of these general principles is affected by the allocation of

the evidentiary burden of persuasion were the dispute to proceed to trial.  That is, a trial

court's approach to summary judgment is dependent upon whether the party seeking

summary judgment would have the burden of persuasion at trial.  <u>See</u> <u>generally</u> 11

<u>Moore's Federal Practice 3d</u>, §§ 56.03[4], 56.13[3] (2006).  This approach was well

summarized in <u>Adams v. Consolidated Rail Corp.</u>, 1994 WL 383633, at *1-*2 (E.D. Pa.

1994) (citations omitted):

> The Supreme Court articulated the allocation of burdens
> between a moving and nonmoving party in a motion for
> summary judgment in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317
> (1986).  The Court held that where the movant is the
> defendant, or the party without the burden of proof on the
> underlying claim, the movant still has the initial burden of

7

showing the court the absence of a genuine issue of material
fact, but that this does not require the movant to support the
motion with affidavits or other materials that negated the
opponent's claim. Id. at 323. In contrast, where, as here, "the
party moving for summary judgment is the plaintiff, or the
party who bears the burden of proof at trial, the standard is
more stringent." National State Bank v. Federal Reserve
Bank [of New York], 979 F.2d 1579, 1582 (3d Cir. 1992). To
sustain its initial burden under such circumstances, the
movant must:

> "support its motion with credible evidence . . .
> that would entitle it to a directed verdict if not
> controverted at trial. In other words, the
> moving party must show that, on all the
> essential elements of its case on which it bears
> the burden of proof at trial, no reasonable jury
> could find for the non-moving party."

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir.
1993). . . . If the movant makes such an affirmative showing,
it is entitled to summary judgment unless the nonmoving
party, in response, comes forward with significant, probative
evidence demonstrating the existence of a triable issue of fact.
. . .

Accord In re White, 243 B.R. 498, 501 n.4 (Bankr. N.D. Ala. 1999).

In applying these standards to the cross-motions before me, Colonel

Washington can prevail on her request for summary judgment under section 523(a)(2)

only by establishing that no material facts are in dispute as to all of the requisite elements

for relief under this subsection and that she is entitled to judgment as a matter of law.

Conversely, Mr. Jadczak can prevail on his motion for summary judgment by

demonstrating that the plaintiff is unable to demonstrate her ability to prevail at trial

under either section 523(a)(2) or (a)(4).  See generally In re Miller, 409 B.R. 299, 310-11

(Bankr. E.D. Pa. 2009).[4]

III.

Colonel Washington seeks summary judgment as to count I—a

determination that she holds a nondischargeable claim against Mr. Jadczak based upon 11

U.S.C. § 523(a)(2)(A).  Mr. Jadczak essentially seeks summary judgment as to all three

counts raised by the plaintiff.  He maintains that, while the plaintiff holds a claim, via

state court judgments, against T&A Auto Sales, LLC and Mr. DeCastro, and while his

counsel conceded at oral argument that the plaintiff was a victim of a fraud, nevertheless,

Colonel Washington has no claim against him individually.  In so doing, he relies upon

Pennsylvania law, specifically its Limited Liability Company Law, 15 Pa. C.S.A. §§

8901, et seq.  See Debtor's Memorandum, at 4.

Section 523(a) provides that certain "debts" are not dischargeable.  A debt

is defined in section 101(12) as a "liability on a claim."  A "creditor" is an entity that has

a claim against the debtor.  11 U.S.C. § 101(10).  And a claim means "a right to payment,

whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. §

101(5)(A).  As one court has observed:

---

[4]If the plaintiff does not hold a non-dischargeable claim against the debtor, then her state law causes of action need not be adjudicated, as those claims will be discharged and as this is a no-asset chapter 7 case with creditors being informed under Fed. R. Bankr. P. 2002(e) that no proofs of claim need be filed.

> Accordingly, every dischargeability proceeding involves two separate inquiries. First, does the creditor hold an enforceable obligation under non-bankruptcy law. Second, is the debt non-dischargeable under bankruptcy law, specifically § 523(a). . . . In the absence of an enforceable obligation, there is no "debt" that can be non-dischargeable.

In re Roland, 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003) (citations omitted). Accord In re Bundick, 303 B.R. 90, 103 (Bankr. E.D. Va. 2003) ("An action to determine the dischargeability of a debt under § 523(a) has two components. . . . The first step requires that the creditor establish that a debt is in fact owed by the debtor.") (citations omitted); see, e.g., In re Hazelton, 304 B.R. 145, 150 (Bankr. M.D. Pa. 2003) ("Application of a subsection 523(a) discharge exception hinges on a finding, under applicable law, that the obligations at issue are personal debts of Debtor."); In re Desiderio, 213 B.R. 99, 106 (Bankr. E.D. Pa. 1997) ("[T]he presence of a debt in some amount must be proven to support a claim of nondischargeability."). Therefore, if Colonel Washington is not a creditor of the debtor then she cannot prevail under either section 523(a)(2)(A) or 523(a)(4).

In order to be classified as a creditor of Mr. Jadczak, Colonel Washington must be able to assert a right to payment from him, even if such an assertion may be disputed by the debtor. See In re Abijoe Realty Corp., 943 F.2d 121, 125 (1st Cir. 1991). Indeed, Congress chose the "broadest possible definition" of the term "claim." See In re Grossman's Inc., 607 F.3d 114, 121 (3d Cir. 2010) (en banc) (citing H.R. Rep. No. 95-595, at 309 (1977)). Thus, Colonel Washington will be considered a creditor, and therefore possibly entitled to seek relief under section 523(a), unless her claim against Mr. Jadczak is "facially meritless." See In re Abijoe Realty Corp., 943 F.2d at 125.

10

Whether an entity holds a claim against the debtor is generally determined by relevant non-bankruptcy law, typically state law.

> This reading of § 502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 20 . . . (2000).  That principle requires bankruptcy courts to consult state law in determining the validity of most claims.  See ibid.

> Indeed, we have long recognized that the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" Ibid.

Travelers Casualty and Surety Co. of America v. Pacific Gas and Elec. Co., 549 U.S. 443, 450-51 (2007) (citations omitted); see, e.g., Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 161 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law.").

Here, the debtor argues, and Colonel Washington does not challenge, that the relevant state law is Pennsylvania law.  Under Pennsylvania law:

> (a) Except as provided in subsection (e), the members of a limited liability company shall not be liable, solely by reason of being a member, under an order of a court or in any other manner for a debt, obligation or liability of the company of any kind or for the acts of any member, manager, agent or employee of the company.
>                            ***
> (e) The certificate of organization may provide that some or all of the members shall be liable for some or all of the debts,

11

obligations and liabilities of the company to the extent and
under the circumstances provided in the certificate.

15 Pa. C.S.A. § 8922.

Mr. Jadczak contends that, although Colonel Washington has a valid claim

against his limited liability company, T&A Auto, for fraud, based upon the judgment

against it, she has no state law ground for a claim against him individually based upon his

membership in that company, relying upon section 8922(a).[5]  See generally In re LMcD,

LLC, 405 B.R. 555, 560 (Bankr. M.D. Pa. 2009) ("Under that law [the Pennsylvania

Limited Liability Company Law of 1994], much like corporate stockholders, members are

not typically liable for the obligations of the company.  15 Pa. C.S.A. § 8922."); Missett

v. Hub International Pennsylvania, LLC, 6 A.3d 530, 532 n.2 (Pa. Super. 2010) ("Like a

corporation, LLC members' liability is limited to the amount of capital invested.  Id. at

130; 15 Pa. C.S.A. § 8922."); id., 6 A.2d at 537.

Therefore, in order to survive the debtor's motion for summary judgment

(or to prevail upon her own motion), the first issue to consider is whether disputed or

undisputed facts have been adduced that would permit a finding at trial that the plaintiff

has a claim against this individual debtor.

Under Pennsylvania law there are two distinct potential grounds for holding

limited liability company members individually liable for the debts of the company, such

as those arising under these undisputed facts, independent of the terms of the operating

agreement.

---

[5]The plaintiff has offered no evidence of the terms of T&A Auto's limited liability
operating agreement.  Therefore, there is no basis to conclude under section 8922(e) that such an
agreement rendered members of T&A Auto individually liable for company obligations.

First, in limited circumstances, the company veil may be "pierced" as a

sham entity, or alter ego of the individual member.  See In re LMcD, LLC, 405 B.R. at

560; see generally Wicks v. Milzoco Builders, Inc., 503 Pa. 614, 621 (1983).  As one

court has observed recently:

> In Pennsylvania there is a strong presumption against piercing
> the veil. . . .  There is no definitive standard in
> Commonwealth law for the application of this theory, but the
> typical argument states that it is appropriate to pierce the veil
> in order to "prevent fraud, illegality, or injustice, or when
> recognition of the corporate entity would defeat the public
> purpose or shield someone from a liability for a crime."
> Village at Camelback Property Owners Assn. Inc. v. Carr, 371
> Pa. Super. 452, 461, 538 A.2d 528, 533 (Pa. Super. 1988)
> (citing Zubik v. Zubik, 384 F.2d 267 (3d Cir. 1967)).  The
> factors to be considered in disregarding the corporate form are
> said to be undercapitalization, failure to adhere to corporate
> formalities, substantial intermingling of corporate and
> personal affairs, and use of the corporate form to perpetuate a
> fraud. . . .

In re LMcD, LLC, 405 B.R. at 560 (citations omitted); see Plastipak Packaging, Inc. v.

DePasquale, 75 Fed. Appx. 86, 88 (3d Cir. 2003) (non-precedential); Kaplan v. First

Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir. 1994), aff'd, 514 U.S. 938

(1995).  Although there are some allegations in the complaint in this proceeding

suggesting a theory of veil piercing, the plaintiff has offered no evidence in connection

with these cross-motions for summary judgment that would warrant a finding, either

based upon disputed or undisputed facts, that the veil of T&A Auto should be pierced to

hold its members individually liable.  See generally In re LMcD, LLC, 405 B.R. at 564;

see also Inoff v. Craftex Mills, Inc., 2007 WL 4355385, at *14-*15 (E.D. Pa. 2007).

The second ground to establish individual liability (and the one relied upon

by the plaintiff in connection with these cross-motions) is known as the "participation

theory" of liability.  See generally Wicks v. Milzoco Builders, Inc., 503 Pa. at 621.  As

the Pennsylvania Supreme Court has explained:

> In the instant case, however, appellants have not challenged
> the legitimacy of Milzoco Builders or Carroll Builders nor
> have they alleged that appellees have used the corporate form
> merely as a vehicle by which they seek to engage in illegal or
> improper acts with impunity.  Instead, appellants seek to hold
> Miller, Cook and Zollers liable on the theory that they
> personally participated in the alleged tortious acts committed
> on behalf of the corporations.  There is a distinction between
> liability for individual participation in a wrongful act and an
> individual's responsibility for any liability-creating act
> performed behind the veil of a sham corporation.  Where the
> court pierces the corporate veil, the owner is liable because
> the corporation is not a bona fide independent entity;
> therefore, its acts are truly his.  Under the participation theory,
> the court imposes liability on the individual as an actor rather
> than as an owner.  Such liability is not predicated on a finding
> that the corporation is a sham and a mere alter ego of the
> individual corporate officer.  Instead, liability attaches where
> the record establishes the individual's participation in the
> tortious activity.

> Pennsylvania law recognizes the participation theory as a
> basis of liability.

>> The general, if not universal, rule is that an
>> officer of a corporation who takes part in the
>> commission of a tort by the corporation is
>> personally liable therefor; but that an officer of
>> a corporation who takes no part in the
>> commission of the tort committed by the
>> corporation is not personally liable to third
>> persons for such a tort, nor for the acts of other
>> agents, officers or employees of the corporation
>> in committing it, unless he specifically directed
>> the particular act to be done or participated, or
>> cooperated therein.

> 3A Fletcher, Cyclopedia of the Law of Private Corporations §
> 1137, p. 207 (perm. ed. rev. 1975). . . .

> Liability under this theory attaches only where the corporate
> officer is an actor who participates in the wrongful acts.

14

> Therefore, corporate officers may be held liable for
> misfeasance. . . .  Nevertheless, corporate officers and
> directors may not be held liable for mere nonfeasance. . . .
> Thus, the mere averment that a corporate officer should have
> known the consequences of the liability-creating corporate act
> is subject to a motion to strike for impertinence and proof of
> that averment alone is insufficient to impose liability.

Id., 503 Pa. at 621-22 (footnote and citations omitted); see also In re Kitchin, 2010 WL

4509808, at *4 (Bankr. E.D. Pa. 2010).

In other words, Mr. Jadczak could be held individually liable for a fraud

claim against T&A Auto, such as the one asserted in this proceeding by Colonel

Washington, if he took part in the commission of the fraud, or in some manner directed

others to commit the fraud.  See A & F Corp. v. Brown, 1996 WL 466909, at *4-*5 (E.D.

Pa. 1996); see generally Loeffler v. McShane, 372 Pa. Super. 442, 447 (1988) (corporate

officer individually liable for negligence); Kelvin Cryosystems, Inc. v. Lightnin, 2004

WL 2601121, at *12-*13 (E.D. Pa. 2004) (corporate officer liable for misfeasance).

The plaintiff has the evidentiary burden to prove Mr. Jadczak's individual

liability under the participation theory.  See, e.g., Wicks v. Milzoco Builders, Inc., 503 Pa.

at 622-23; Shay v. Flight C Helicopter Services, Inc., 822 A.2d 1, 17 (Pa. Super. 2003)

("To impose liability on a corporate officer pursuant to the participation theory, a plaintiff

must establish that the corporate officer engaged in misfeasance, i.e., "the improper

performance of an act."  Brindley [v. Woodland Village Restaurant, Inc.], 652 A.2d [385]

at 868 [Pa. Super. 1995].");  In re Kitchin, 2010 WL 4509808, at *4.  Implicitly relying

upon this evidentiary burden, the debtor contends that Colonel Washington offers no

evidence of his participation in the fraud against her, thereby entitling him to summary

judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986) ("the plaintiff,

to survive the defendant's motion [for summary judgment], need only present evidence from which a jury might return a verdict in [its] favor.  If [it] does so, there is a genuine issue of fact that requires a trial."); 2 Russell, Bankruptcy Evidence Manual, § 301.93, at 396 (2010-11) ("A defendant moving for summary judgment need not negate the plaintiff's claim, but need only point out to the court that there is an absence of evidence in support of the plaintiff's case.").  Accordingly, Colonel Washington must demonstrate the debtor's knowing participation in the scheme to defraud her in order to prevail on either motion for summary judgment.

In support of her contention that the participation theory applies to the debtor, the plaintiff argues:

> Jadczak, on behalf of T&A, received Washington's payment for the Vehicle.  He deposited the money into the T&A bank account and then he sent Washington's money to his cohort, DeCastro.  Jadczak never attempted to deliver the Vehicle that Washington purchased from T&A even though he received a check from a banking institution tendered to pay for a car purchased from his company.  T&A is an inanimate fictitious entity that can only act through its human component, here Jadczak.  While Washington conducted her business with T&A, Jadczak is the malefactor who accepted Washington's money in payment, and then he signed and sent the money Washington paid to T&A for the Vehicle to DeCastro completing the embezzlement of Col. Washington.

> It is well established under Pennsylvania law that a corporate officer is individually liable for torts he personally commits, and cannot shield himself behind a corporation when he is an actual participant in the tort.  Donsco, Inc. v. Casper Corporation, 587 F.2d 602, 606 (3d Cir. 1978).  Here, Jadczak does not deny that he received Washington's money to pay for the car, or that he sent that money to DeCastro, and that he did not deliver to Washington the car she purchased from T&A.

Plaintiff's Memorandum, at 5-6.

16

However, the evidence offered by Colonel Washington in support of her motion for summary judgment, and in opposition to the debtor's motion, fails to demonstrate that she ever dealt with the individual debtor when acting to purchase a car from T&A Auto. She tendered her payments to T&A Auto through individuals other than Mr. Jadczak. She traveled to the Manheim auto auction in the company of individuals other than Mr. Jadczak. Mr. Jadczak was not the individual with whom she signed the purchase agreement. She does not aver that she ever spoke with Mr. Jadczak in August 2008.

Mr. Jadczak on behalf of T&A Auto did sign checks payable to Mr. DeCastro in August 2008 roughly equivalent to the amount that the plaintiff paid for her intended automobile. One can draw the inference that these payments to Mr. DeCastro were related to the agreement T&A Auto made with Colonel Washington. There is no evidence, though, that, in authorizing these payments to Mr. DeCastro, Mr. Jadczak was aware of the fraud against the plaintiff and that he intended to further it in any way.[6] In other words, after the opportunity for discovery in this adversary proceeding, and after an arbitration hearing in state court against T&A Auto, Colonel Washington cannot point to any evidence that she would adduce at trial to show Mr. Jadczak's active participation in the fraud against her. See generally Inoff v. Craftex Mills, Inc., 2007 WL 4355385, at *14-*15.

---

[6]Indeed, in connection with the plaintiff's summary judgment motion, one may draw the inference that Mr. Jadczak was unaware of fraud against the plaintiff, in that he transferred virtually all of the funds paid by Colonel Washington from the account of T&A Auto to Mr. DeCastro. Were he an active participant of the fraud by T&A Auto against the plaintiff, he would not have transferred those funds from the limited liability company's account.

17

Perhaps, as one of two members of T&A Auto, the debtor could have, or even should have, investigated the activities of Mr. DeCastro in August 2008 when tendering him more than $30,000. Under Pennsylvania common law, however, as determined by its Supreme Court, such nonfeasance on his part would not render him individually liable for the obligation owed by T&A Auto to Colonel Washington. Wicks v. Milzoco Builders, Inc., 503 Pa. at 621-22; see, e.g., Shay v. Flight C Helicopter Services, Inc., 822 A.2d at 19; McCracken v. Daimler Chrysler Motors Co. LLC, 2008 WL 920344, at *3-*4 (E.D. Pa. 2008); see generally Com. ex rel. Corbett v. Snyder, 977 A.2d 28, 46 (Pa. Cmwlth. 2009); Alpart v. General Land Partners, Inc., 574 F. Supp.2d 491, 501 (E.D. Pa. 2008).

Accordingly, the plaintiff cannot meet her evidentiary burden to demonstrate, in opposing the debtor's motion for summary judgment, that she holds a claim against the individual debtor for fraud, even within the broad meaning of 11 U.S.C. § 101(5). Therefore, for purposes of section 523(a)(2)(A), as Colonel Washington is not a creditor of Mr. Jadczak, his motion for summary judgment must be granted and judgment entered in his favor in this proceeding on this aspect of count I. In addition, as counts II and III are dependent upon the fraud allegation against the debtor, summary judgment shall also be entered on those two causes of action.

III.

Not addressed by either party in their respective cross-motions, however, is the portion of count I that seeks relief under section 523(a)(4). That provision states:

18

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

\*\*\*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Accordingly, "[s]ection 523(a)(4) provides that debts for fraud <u>or</u> defalcation while acting in a fiduciary capacity are nondischargeable." <u>In re Burton</u> 2010 WL 3422584, at *5 (B.A.P. 10th Cir. 2010) (emphasis added); <u>see</u>, <u>e.g.</u>, <u>In re Coley</u>, 433 B.R. 476, 494 (Bankr. E.D. Pa. 2010). Thus, even if Mr. Jadczak did not act fraudulently in dealing with Colonel Washington, and even if he is not individually liable for the fraud committed by agents of T&A Auto, a defalcation made by him while acting in a fiduciary capacity to the plaintiff could establish his personal liability to Colonel Washington and be nondischargeable. Colonel Washington alleges that T&A liquidated all of its assets without payment to her as a creditor. If true, the plaintiff may be able to prove the debtor's liability under section 523(a)(4).

Pennsylvania law provides for dissolution of a limited liability company to be authorized in a number of ways. 15 Pa. C.S.A. § 8971. The members of the company, even those who are not managers, may be responsible for the winding up its affairs. 15 Pa. C.S.A. § 8973.

Pennsylvania's Limited Liability Company Act of 1994 contains this provision:

Distribution of assets upon dissolution

(a) <u>General rule</u>.—In settling accounts after dissolution, the liabilities of the limited liability company shall be entitled to payment in the following order:

19

(1) Those to creditors, including members or managers who are creditors, in the order of priority as provided by law, in satisfaction of the liabilities of the company, whether by payment or the making of reasonable provision for payment thereof, other than liabilities for distributions to members under section 8932 (relating to distributions and allocation of profits and losses) or 8933 (relating to distributions upon an event of dissociation).

(2) Unless otherwise provided in the operating agreement, to members and former members in satisfaction of liabilities for distributions under section 8932 or 8933.

(3) Unless otherwise provided in the operating agreement, to members in respect of:

(i) Their contributions to capital.

(ii) Their share of the profits and other compensation by way of income on their contributions.

(b) Provision for claims.—A company that has dissolved shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional or unmatured claims and obligations, known to the company and all claims and obligations that are known to the company but for which the identity of the claimant is unknown.  If there are sufficient assets, such claims and obligations shall be paid in full, and any such provision for payment made shall be made in full.  If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefor.  Unless otherwise provided in the operating agreement, any remaining assets shall be distributed as provided in this chapter.  Any liquidating trustee winding up the affairs of a company who has complied with this section shall not be personally liable to the claimants of the dissolved company by reason of his actions in winding up the company.

15 Pa. C.S.A. § 8974.

As orally argued by plaintiff's counsel, under Pennsylvania law, corporate directors, in certain instances, may be acting in a fiduciary capacity on behalf of creditors of the corporation when liquidating assets of the corporation and/or dissolving the corporation.  For example, in <u>Heaney v. Riddle</u>, 343 Pa. 453 (1942), the Pennsylvania Supreme Court explained:

> At the time, therefore, when The Riddle Company dissolved, there was outstanding against it a potential or contingent liability on this obligation of indemnity, and the statement in the petition for dissolution that the company had 'no debts or liabilities whatsoever' was not in accord with the fact.  While it is true that there could be no recovery against the company unless and until plaintiff sustained an actual loss by payment of the mortgage debt . . ., nevertheless the corporation could not dissolve and distribute its assets among its stockholders without its liquidating trustees retaining sufficient assets to provide for the corporate debts, including contingent claims and obligations under executory contracts. . . .  The assets of a dissolved corporation constitute a trust fund for creditors and stockholders . . ., and when defendants, as liquidating trustees, distributed the assets among themselves as stockholders they made themselves personally liable, by reason of such breach of their trust, to a creditor whose right to priority could not be thus destroyed.

<u>Id.</u>, at 456 (citations omitted).  <u>See</u>, <u>e.g.</u>, <u>Robar Development Corp. v. Minutello</u>, 268 Pa. Super. 406, 409-10 (1979):

> The crux of this dispute lies in the propriety of the distribution to appellants of the proceeds from the sale of all of the tangible personal property of the corporation.
>
> The court below reasoned that since appellants were sole stockholders and officers in the corporation, this payment to themselves as creditors of their corporation, no matter how legitimate the debt, was in effect a preferential payment to themselves and was in contravention of their fiduciary duty to protect the interest of the other creditors.
>
> We agree.  Although technically when the distribution took place, no debts were owing, clearly appellant knew that the

21

> balance of the rental payments owed by the corporation to
> appellee could not be paid by the corporation.  (Indeed,
> appellants for a period of 6 months individually paid the
> $150.00 a month rent).  The corporation had no assets; the
> distribution had been, in effect, a "dissolution" of the
> corporation without adequate notice to creditors.

In addition, a similar state law fiduciary duty applies to corporate officers of

insolvent entities.  See, e.g., Sicardi v. Keystone Oil Co., 49 Pa. 148, 153 (1892);

Voest-Alpine Trading USA Corp. v. Vantage Steel Corp., 919 F.2d 206, 209 & 217 n. 25

(3d Cir. 1990) (under Pennsylvania law, debtors "breached their fiduciary duty owing to

[the corporation] and thus to [the corporation's] creditors when they participated in the

fraudulent conveyance of [the corporation's] assets . . . for less than full consideration"

while the corporation was insolvent); Brown v. Presbyterian Ministers Fund, 484 F.2d

998, 1005 (3d Cir. 1973) ("As an officer, director, and principal stockholder of an

insolvent corporation ... [the defendant] was duty bound to act 'with absolute fidelity to

both creditors and stockholders' ") (citation omitted).

Courts have held that the failure to use corporate assets toward the payment

of corporate creditor claims before all assets are liquidated and distributed to shareholders

may constitute a defalcation while acting in a fiduciary capacity within the meaning of

section 523(a)(4).  See, e.g., In re Bruning, 143 B.R. 253 (D. Colo. 1992); In re Carretta,

219 B.R. 66 (Bankr. D.N.J. 1998); In re Bagel 1992 WL 477052 (Bankr. E.D. Pa. 1992),

aff'd, 22 F.3d 300 (3d Cir. 1994) (Table); see generally In re Docteroff, 133 F.3d 210,

217 (3d Cir. 1997) ("a transfer of funds from Burger when it was insolvent to pay a debt

to Docteroff violated Docteroff's fiduciary duty to Burger's creditors").

22

In raising this issue in her complaint, Colonel Washington assumes that
Pennsylvania would apply these corporate common law fiduciary duties to limited
liability companies.  See JPMorgan Chase Bank, N.A. v. KB Home, 632 F. Supp.2d 1013
(D. Nev. 2009):

> Under the corporate law of many states, directors of an
> insolvent corporation owe a fiduciary duty to the company's
> creditors.
>
>           ***
>
> Although limited liability companies differ from corporations,
> the same policies of protecting creditors of insolvent
> corporations are applicable to the creditors of insolvent
> limited liability companies.  Indeed, at least one court held
> that managers of an insolvent limited liability company owe a
> duty to the company's creditors.  In re McCook Metals,
> L.L.C., 319 B.R. 570, 595 (Bankr. N.D. Ill. 2005).  Because
> the justifications for the corporate insolvency exception are
> equally applicable to limited liability companies, the Court
> concludes the Nevada Supreme Court would extend the
> insolvency exception to limited liability companies.

Id., at 1026-27.  In his summary judgment motion the debtor does not address the section
523(a)(4) claim and so does not challenge this assumption.

Given the language of 15 Pa. C.S.A. § 8974(b), the extent of damage
suffered by any individual LLC creditor owing to a breach of this fiduciary duty would be
determined by fixing the creditor's pro rata distribution entitlement: viz., the value of the
liquidated assets divided by the amount of company debt.  See In re Thomas, 255 B.R.
648, 655 (Bankr. D.N.J. 2000) ("It would appear that if liability is established, Cormack
would only be entitled to damages equal to his proportionate share of any misappropriated
funds based upon the percentage which Cormack's claim is of the total unsecured
claims."); see generally In re Casini, 307 B.R. 800, 819-20 (Bankr. D.N.J. 2004).  Such

damages could well be different from the amount paid by the plaintiff to T&A Auto, and could not exceed the company's liability as determined by the arbitration award against it.

Although Colonel Washington's complaint asserts a claim under section 523(a)(4), and the complaint alleges that the corporation liquidated its assets without payment to her as a creditor, neither the plaintiff nor the debtor has addressed this issue in their respective motions for summary judgment. Therefore, this portion of count I of the complaint, along with the debtor's counterclaim under section 523(d), remain unresolved by the disposition of these cross-motions and must be determined at the forthcoming trial.

An appropriate order will be entered.

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: January 4, 2011

24